**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**GALE A. LABOUNTY**,

    Plaintiff,

v.                                                                                        **Case No. 8:06-CV-146-T-EAJ**

**JO ANNE B. BARNHART,
Commissioner of Social Security,**

    Defendant.

_____/

## ORDER

Before the court are Plaintiff's **Motion to Remand Pursuant to 42 U.S.C. § 405(g) (Sentence 6)** (Dkt. 9), filed on May 24, 2006 and Defendant's **Memorandum in Support of the Commissioner's Decision** (Dkt. 16), filed on August 7, 2006.[1] Defendant's response to Plaintiff's motion is incorporated in her Memorandum. (Dkt. 16 at 11-14).

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g) et seq., to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits.

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] The parties have consented to proceed before the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed. R. Civ. P. (Dkt. 8).

Plaintiff submits that remand is required under sentence six of 42 U.S.C. § 405(g) due to the presentation of new evidence from Plaintiff's treating physician Amarelles Torres, M.D. ("Dr. Torres").[2] In the memorandum in support of her motion (Dkt. 11), Plaintiff also raises issues that should be addressed under sentence four of 42 U.S.C. § 405(g). The court will address Plaintiff's sentence six and sentence four arguments separately.

**I.**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on March 4, 2003, claiming an onset of disability beginning on July 27, 2001. (T 74-76) Plaintiff's application was denied initially, upon reconsideration, and by the Administrative Law Judge ("ALJ") in a decision issued on October 6, 2005. (T 16-24) The Appeals Council declined to review the ALJ's decision (T 6-8), making the ALJ's decision the final decision of the Commissioner.

The ALJ found that Plaintiff was not eligible for DIB because she was not disabled at any time through the ALJ's decision on October 6, 2005. (T 23) Disability benefits were denied. (T 24) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff was 43 years old at the time of the administrative hearing on March 16, 2005. (T 38, 74) Plaintiff attended school through 11th grade and has not received any vocational or specialized training. (T 93) Plaintiff's past relevant work experience consists of work as a cashier. (T 88) Plaintiff asserts that carpal tunnel syndrome in both wrists, tendonitis, fibromyalgia, arthritis,

---

[2] Plaintiff submitted this evidence to the Appeals Council after the ALJ rendered his decision denying benefits. (Dkt. 9, Attach. 1).

osteoporosis, depression, and hepatitis C have rendered her unable to work since July 27, 2001. (T 87)

Following the administrative hearing, the ALJ found that Plaintiff suffered from bilateral carpal tunnel, tendonitis, hepatitis C, fibromyalgia, gastroesophageal reflux disease, chronic neck and low back pain, osteopenia, post menopausal syndrome, a small left ovarian cyst, polyarthralgias, and psoriasis. (T 17) Although the ALJ determined that the above impairments considered in combination are severe, the ALJ found that they are "not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Id. The ALJ further determined that Plaintiff's depression and anxiety are not severe and that Plaintiff could perform a full range of light work activity.[3] (T 17, 22) Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could return to her past relevant work as a cashier. (T 22) In reaching the conclusion that Plaintiff had not been under a "disability" since July 27, 2001, the ALJ found that Plaintiff's statements regarding her symptoms and impairments were not wholly credible. (T 21)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**II.**

To obtain a "sentence six" remand, a claimant must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there is a reasonable possibility that it would change the administrative results; and (3) there is good cause

---

[3] Light work, defined at 20 C.F.R. §§ 404.1567(c), 416.967(c), involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds.

for failure to submit the evidence at the administrative level.  <u>Cannon v. Bowen</u>, 858 F.2d 1541, 1546 (11th Cir. 1988) (internal citations and quotations omitted).

The additional evidence presented here consists of a Physical Residual Functional Capacity Questionnaire completed by Dr. Torres on December 4, 2005.  To warrant remand, Plaintiff must show that this evidence is material, i.e., that there is a reasonable possibility that it would change the administrative result.

In his decision denying benefits, the ALJ discussed Dr. Torres' treatment of Plaintiff at length and outlined Dr. Torres' notes related to eleven separate treatment dates. (T 18-19) The ALJ clearly relied upon Dr. Torres' reports and highlighted Dr. Torres' findings from several of Plaintiff's treatment dates.  In fact, the ALJ found that Plaintiff's testimony regarding her symptoms was not fully credible on the basis of Dr. Torres' treatment notes.  The ALJ emphasized the following of Dr. Torres' findings:

> "Dr. Torres, a rheumatologist, reported on August 7, 2001, that the claimant had a normal range of motion and normal flexion/extension bilaterally.  On December 21, 2001, the claimant was doing relatively well as long as she took her medications.  She also tolerated her symptoms quite well with Vioxx and Flexeril.  Her bilateral De Quervain's tenosynovitis had improved after she was given a steroid injection.  Dr. Torres also reported on February 24, 2003, that the claimant's depression was stable with Lexapro (Exhibit 8F).  On January 9, 2004, the claimant said that her medications continued to help with myalgias and arthralgias.  On January 5, 2005, she reported doing quite well in regard to her joints and muscles as long as she continued to pace herself at home.  An examination showed that the claimant had a normal range of motion in her elbows and wrists and that her hand grip was also normal.  She had no vertebral tenderness to palpation and no paravertebral muscle tenderness. A straight-leg raising test was negative bilaterally.  Dr. Torres noted that the claimant had fibromyalgia syndrome – with symptoms that continued to be acceptably palliated on the present interventions as long as she continued to be able to pace herself (Exhibits 13F and 14F)."

(T 21)

The questionnaire now submitted by Dr. Torres, which Plaintiff argues justifies remand under "sentence six," is at odds with Dr. Torres' treatment notes in the record. In the questionnaire, Dr. Torres opines that Plaintiff's pain or other symptoms "constantly" interferes with the attention and concentration necessary to perform even simple work tasks. (Dkt. 9, Attach. 1 at 3). Dr. Torres states that Plaintiff is incapable of even low stress jobs, because she is suffers from depression which can be exacerbated by stress. Id. Dr. Torres indicates that Plaintiff can sit for only one hour before needing to get up, that she can stand for only 10 minutes before needing to sit or walk, that she must have 2-3 minute periods of walking around every 10-15 minutes, must be able to shift positions at will, and will need to take unscheduled breaks "just about daily" during an 8-hour work day. Id. at 4.

In the questionnaire, Dr. Torres also asserts that Plaintiff can rarely lift up to 10 lbs. and can never lift above 10 lbs. Id. at 5. Dr. Torres states that Plaintiff can rarely twist or stoop and can never crouch/squat, climb ladders, or climb stairs. Id. He assesses that during an 8-hour workday, Plaintiff would be able to use her hands 25% of the time, her fingers 25% of the time, and could reach with her arms 10-15% of the time. Id. Dr. Torres estimates that Plaintiff's impairments or treatment would cause her to miss approximately four days of work per month. Dr. Torres also writes that Plaintiff should not be exposed to temperature extremes and that her depression and her medications "adversely affect her concentration and her cognitive function, impairing her interpersonal relations and interactions." Id. at 6.

However, there are no accompanying clinical findings to support this new opinion. Dr. Torres' treatment notes which are already part of the record do not support the extensive limitations detailed in Dr. Torres' December 4, 2005 assessment. (T 223-37, 270-77) The opinions expressed

5

by Dr. Torres in the questionnaire are not corroborated by his treatment notes and previous findings in the record. The ALJ may discount a treating physician's opinion if it is not well-supported by medical evidence or is inconsistent with the record as a whole. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004) (ALJ may discount a treating physician's opinion when that opinion is unsupported by the medical evidence and contradicts the physician's own treatment notes).

Taking into consideration the substantial weight that the ALJ gave Dr. Torres' treatment notes, and also the fact that the newly submitted evidence does not contain objective support—such as new diagnostic or clinical evidence—for Dr. Torres' opinion, the undersigned determines that the additional report generated by Dr. Torres is not material. The inclusion of this evidence would be unlikely to change the ALJ's decision in light of the significant weight the ALJ accorded to Dr. Torres' objective medical treatment notes. For these reasons, the undersigned determines that new evidence from Dr. Torres is not material.

Because the evidence presented is not material, it is not necessary to reach the issues of whether the evidence is non-cumulative or whether there was good cause for not submitting the evidence at the administrative level. The evidence submitted by Plaintiff does not meet the materiality requirement for a "sentence six" remand.

### III.

Regarding Plaintiff's "sentence four" arguments, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g)(2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."

Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**IV.**

Plaintiff argues that the Commissioner erred by: (1) failing to comply with the required technique for analyzing mental impairments found in 20 C.F.R. § 416.920(a); (2) finding that Plaintiff could return to her past relevant work; and (3) failing to adequately assess Plaintiff's credibility (Dkt. 11 at 8-11).

**A.** Plaintiff contends that the ALJ did not properly follow the required technique for analyzing mental impairments as set forth in 20 C.F.R. § 416.920(a)[4] (Dkt. 11 at 8). Specifically, Plaintiff argues that the ALJ failed to consider evidence from Dr. Torres, Plaintiff's treating physician, and Michael R. Stephens, Ph.D. ("Dr. Stevens"), a non-evaluating consultative physician, regarding whether Plaintiff could 1) understand, carry out, and remember simple instructions; 2) respond

---

[4] Plaintiff cites 20 C.F.R. § 416.920a as the proper procedure for evaluating mental impairments; however, this regulation applies to applications for Supplemental Security Income ("SSI"). Plaintiff's claim for Disability Insurance Benefits ("DIB") is at issue here; therefore, the applicable regulation for evaluating mental impairments that the court will consider is 20 C.F.R. § 404.1520a.

7

appropriately to supervision, co-workers and usual work situations; and 3) deal with changes in a routine work setting (Dkt. 11 at 9). Plaintiff further argues that the ALJ failed to rate the degree of functional loss resulting from the mental impairment in 1) activities of daily living and 2) concentration, persistence or pace in accordance with 20 C.F.R. § 416.920(c)(3).

The ALJ discussed the results of a psychological examination conducted in June 2003 by B.J. Hatton, Ph.D. ("Dr. Hatton"). (T 19) Dr. Hatton indicated that Plaintiff showed no evidence of a psychotic symptomatology or personal[ity] disorder, her speech and language skills were adequate, and she was able to do simple math calculations. (T 204) Dr. Hatton reported that Plaintiff denied any current suicidal thoughts or attempts, denied any problems with attention, concentration, short or long-term memory, and described her appetite as "good" and her energy level as "fairly good." (T 203) Dr. Hatton noted that Plaintiff's affect was fairly bright. (T 204) Dr. Hatton estimated Plaintiff's intelligence to be low average and her global assessment of functioning ("GAF") to be 70. Id.

The ALJ stated that he gave great weight to Dr. Hatton's evaluation because "he did examine and evaluate the claimant." (T 21) The ALJ discussed Plaintiff's mental impairments in evaluating Plaintiff's residual functional capacity, stating that "[t]he psychological consultant also concluded that the claimant's mental impairment was not severe." (T 22) After outlining the evidence discussed above, the ALJ concluded that Plaintiff's depression and anxiety are not severe. (T 23)

20 C.F.R. § 404.1520a governs the Commissioner's evaluation of mental impairments. The Commissioner must first establish whether a claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). A mental impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's]

statement of symptoms." 20 C.F.R. § 404.1508. If the claimant has a medically determinable mental impairment, the Commissioner then rates the degree of functional limitation the impairment causes based on the degree to which it interferes with the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ's opinion must include "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(2). By regulation, the ALJ's decision must include a specific finding about the degree of limitation in each of four areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. Id.; 20 C.F.R. § 404.1520a(c)(3). If the ALJ fails to address a claimant's condition in one of these areas, the case must be remanded for consideration of the omitted factor(s) and reevaluation of a claimant's residual functional capacity in light of all factors. Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005).[5]

In Moore, the Eleventh Circuit remanded where the ALJ failed to analyze the factors of social functioning and prior episodes of decompensation. Id. Under the regulations, the ALJ is required to use the technique for evaluating mental impairments as dictated by the Psychiatric Review Technique Form ("PRTF"), which requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts the four functional areas discussed above. Id. at 1213 (citations omitted). The Moore court held that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to compete a PRTF, append it to

---

[5] Neither Plaintiff nor the Commissioner cites to the Moore decision, but the court finds Moore relevant to the analysis of the issue of whether the ALJ properly evaluated Plaintiff's mental impairments.

9

the decision, *or incorporate its mode of analysis into his findings and conclusions*." Id. at 1214 (emphasis added). Therefore, while the ALJ is not required to attach the completed PRTF to his decision, he is required to at least incorporate the results of the PRTF's technique into his findings.

Here, Plaintiff argues that the ALJ failed to consider the PRTF completed by Dr. Stevens on December 2, 2003 and that the ALJ specifically failed to include an analysis of the degree of functional loss resulting from the mental impairment in the activities of daily living and concentration, persistence, or pace. However, the court finds that the ALJ included in his decision a specific finding in each of the four functional areas. In discussing Plaintiff's residual functional capacity, the ALJ stated, "[t]he claimant has mild restriction of activities of daily living, mild difficulties in maintaining social functioning, concentration, persistence, or pace, and no episodes of decompensation." (T 22) The ALJ further repeated those conclusions in his findings. (T 23) These conclusions mirror the findings documented by Dr. Stevens in the PRTF completed on December 2, 2003. (T 254)

Although the ALJ did not specifically state that he assessed the four functional areas based on the PRTF completed by Dr. Stevens, it is clear that this PRTF was the basis of the ALJ's findings. In addition to the PRTF completed by Dr. Stevens, the record reveals another PRTF completed by Nancy Dinwoodie, M.D. ("Dr. Dinwoodie") on June 20, 2003. (T 209-222) Dr. Dinwoodie's PRTF concludes that Plaintiff has no degree of loss due to mental impairment in any of the four functional areas. (T 219) Thus, rather than one PRTF form, the ALJ had access to two PRTF forms in rating the effect of Plaintiff's mental impairments on the four functional areas. In finding that Plaintiff had mild restriction of activities in the activities of daily living and mild difficulties in maintaining social functioning, concentration, persistence, or pace, the ALJ clearly

considered the PRTF filled out by Dr. Stevens and gave it weight regarding Plaintiff's mental impairments.

The regulation provides, "At the administrative law judge hearing . . . we will document application of the technique in the decision." 20 C.F.R. § 404.1520a(e). The Moore court remanded that case because"[t]he ALJ failed to even analyze *or document* Moore's condition" in two functional areas. Id. (emphasis added). In contrast to the situation in Moore, here, the ALJ clearly documented Plaintiff's condition in all four of the functional areas, thereby incorporating the results of the PRTF in his findings.

Thus, the ALJ appropriately applied the regulatory framework in evaluating Plaintiff's mental impairments and Plaintiff is not entitled to relief on this issue.

**B.**     Next, Plaintiff argues that the ALJ erred in finding that she could return to her past relevant work by not considering all of the duties of Plaintiff's past work and the combined effects of all of Plaintiff's impairments when evaluating her disability (Dkt. 11 at 9).

A claimant bears the burden of proving that she can no longer perform her past relevant work. Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986) (citation omitted). If a claimant "can still do the kind of work he has done in the past, he will be found not disabled." Id. Once the plaintiff has demonstrated that he cannot perform his past relevant work, the burden shifts to the Commissioner to establish that there are other jobs plaintiff can perform. Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989).

The testimony of a vocational expert is required only to determine whether the claimant's residual functional capacity permits him to perform other work after the claimant has met his initial burden of showing that he cannot do past work. Chester v. Bowen, 792 F.2d 129, 131-32 (11th Cir.

1986) (citations omitted). The Commissioner may use vocational testimony to show that there are other jobs in the national economy which plaintiff can perform. Id. In order to make this showing, the Commissioner can utilize the Medical-Vocational guidelines (the "grids") in 20 C.F.R. Subpart P, App. 2 if a claimant primarily suffers from exertional impairments, without significant exertional limitations. When nonexertional limitations are alleged, the use of a vocational expert is preferred. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The grids are not to be used where the claimant is unable to perform a full range of work at a given exertional level or where the claimant has non-exertional impairments that significantly limit work skills. See, e.g., MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

The ALJ must make a particular and well-formulated determination of the combined effect of Plaintiff's impairments. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). Plaintiff's contention that the Commissioner failed to consider the combined effects of her impairments in determining that she could return to her past relevant work is unsupported by the record. The ALJ states in his decision, "The claimant's medically determinable bilateral carpal tunnel, tendonitis, hepatitis C, fibromyalgia, gastroesophageal reflux disease, chronic neck and low back pain, osteopenia, post menopausal syndrome, small left ovarian cyst, polyarthralgias, psoriasis, depression, and anxiety do not prevent her from performing her past relevant work as a cashier. (T 23) Thus, it appears that the ALJ considered Plaintiff's impairments in combination. See Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (language in ALJ's decision stating that claimant "was not suffering from any impairment, or a combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months" evidenced that the ALJ considered impairments in combination).

However, Plaintiff also contends that the Commissioner erred in failing to consider the impact of Plaintiff's treating physician's opinion that Plaintiff was symptomatically palliated only while continuing to pace herself at her former employment. The court agrees and finds that remand is necessary on this issue.

At the March 16, 2005 hearing, the ALJ called on a vocational expert to testify as to any jobs Plaintiff could perform given her residual functional capacity. The ALJ found persuasive the VE's testimony that Plaintiff could return to her past relevant work as a cashier. However, the hypothetical questions that the ALJ posed to the VE regarding Plaintiff's ability to perform her past work as a cashier did not properly consider whether Plaintiff was symptomatically palliated only while continuing to pace herself. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999), cert. denied 529 U.S. 1089 (2000)) (for a VE's testimony to constitute substantial evidence that a claimant can perform certain jobs, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments). During hearing, the ALJ posed the following hypothetical question to the VE:

> Where I conclude that . . . [claimant] has been diagnosed with bilateral carpal tunnel syndrome . . . and tendinitis, Hepatitis C, fibromyalgia, gastroesophogeal reflux disease, chronic neck low back pain, osteopenia, post-menopausal syndrome, small left ovarian cyst polyarthralgia . . . .[and] claimant has the exertional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently, stand, walk, sit six hours in an eight hour day. No limitation in the ability to push pull both hands and foot controls. Can occasionally climb, balance, stoop, kneel, crouch, and crawl. No manipulative [sic] communicative limitations. She should avoid concentrated exposure to extreme cold, extreme height, and unprotected heights. Where I conclude that is an accurate assessment. Could she do past relevant work?

(T 50-51)

In response to this hypothetical, the VE answered in the affirmative that Plaintiff could perform her past relevant work as a cashier. (T 51) The ALJ then questioned the VE further, specifically considering the effect of Plaintiff's mild depression and anxiety:

> I would further conclude that the claimant has been diagnosed with anxiety and depression . . . .[and] [t]hat there is evidence of the A criteria under listing 12.04, affective disorder, and that the functional limitations considered under the B criteria of the Commissioner's Regulations are as follows. Mild restrictions of activities of daily living. Mild difficulties in maintaining social functioning. Mild difficulties in maintaining concentration persistence [or] pace. No documentation in the record of a decompensation in a work or worklike environment. If I were to conclude that that is an accurate assessment, would your conclusions be altered?

(T 51-52) The VE testified that these conditions would not change his conclusion that Plaintiff could perform past relevant work. (T 52) Finally, when questioned as to whether his opinion would change if Plaintiff's and her husband's testimony was found entirely credible and was supported by the medical evidence in the record, the VE testified that his conclusion would be that Plaintiff would be unable to perform her past relevant work. Id.

In posing hypothetical questions to a VE, the ALJ is only required to include those restrictions he recognizes. See Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). In this case, the ALJ's opinion suggests that he recognized Plaintiff's restrictions regarding pace. In his synopsis of Dr. Torres' treatment of Plaintiff, the ALJ mentioned several times Dr. Torres' statements that Plaintiff was acceptably palliated as long as she continued to pace herself. (T 19, 20, 21) Moreover, the ALJ specifically stated that in Dr. Torres' January 5, 2005 evaluation of Plaintiff, Dr. Torres "noted that the claimant had fibromyalgia syndrome—with symptoms that continued to be acceptably palliated on the present interventions as long as she continued to be able to pace herself." (T 21) As discussed previously, the ALJ gave substantial weight to Dr. Torres' treatment notes in his decision to deny benefits. (T 18-19)

However, the court finds that the above hypothetical including "mild difficulties in maintaining concentration persistence [or] pace" does not expressly incorporate the requirement of being able to pace oneself as imposed by Dr. Torres. It is not clear from the hypotheticals posed to the VE whether the ALJ accepted, or what weight he assigned to, Dr. Torres' opinion that Plaintiff's symptoms were acceptably palliated as long as she continued to pace herself. If the ALJ did accept Dr. Torres' opinion, the hypotheticals were incomplete because the ALJ did not question the VE as to different scenarios regarding Plaintiff's ability to pace herself at her employment. Similarly, the ALJ did not question the VE as to the work-related restrictions that would have to be imposed should Plaintiff need to pace herself.

Because the ALJ's hypotheticals to the VE did not properly encompass the limitation of pace and the ALJ did not discuss the weight he assigned to Dr. Torres' opinion, remand is necessary to allow the ALJ to propound a proper hypothetical question regarding Dr. Torres' opinion as to Plaintiff's ability to pace herself and make findings as to whether Plaintiff needs to be able to pace herself in her employment. If necessary, the ALJ should contact Dr. Torres to determine what Dr. Torres meant by the statement that Plaintiff needs to pace herself to remain symptomatically palliated.

**C.**     The final issue Plaintiff raises is whether the ALJ gave proper weight to her pain testimony and adequately explained why he found Plaintiff's testimony not credible (Dkt. 11 at 10).[6] Specifically, Plaintiff argues that the ALJ could not have made an explicit credibility finding

---

[6] The ALJ determined that, while the underlying symptoms could give rise to the symptoms Plaintiff alleged, Plaintiff's allegations regarding the frequency, duration, and intensity of her pain was not fully credible. (T 21) The ALJ stated that the overall medical evidence did not support Plaintiff's claims. Id.

because he was reading medical records in Plaintiff's file instead of observing Plaintiff closely during her testimony. Id. at 10-11.

If a remand is required on some of the issues raised in the case, it may be unnecessary to review other objections to the ALJ's conclusion. See generally Jackson, 801 F.2d at 1294 n.2. Thus, it is unnecessary to address Plaintiff's remaining arguments regarding the credibility assessment.[7] However, the Commissioner is reminded of the substantial body of case law in this area concerning the evaluation of a claimant's subjective complaints of pain. See Landry v. Heckler, 782 F.2d 1551 (11th Cir. 1986); Elam v. R. R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

## V.

Remand is necessary to allow the ALJ to propound a proper hypothetical question regarding Dr. Torres' opinion as to Plaintiff's ability to pace herself and make findings as to whether Plaintiff needs to be able to pace herself in her employment. Upon remand, the parties shall be afforded an opportunity to present evidence on the issues remaining for determination. The court expresses no view as to what the result should be on remand.

---

[7] However, the court finds unpersuasive Plaintiff's argument that the ALJ did not fully and accurately observe Plaintiff because he reviewed medical records during her testimony. To support this allegation, Plaintiff points to the ALJ's statement during the hearing that he reviewed a newly proffered medical record while Plaintiff's attorney was taking her testimony. (T 48-49) However, there is nothing in the record that suggests that the ALJ did not fully and accurately observe Plaintiff. On the contrary, the ALJ specifically stated that he considered Plaintiff's testimony and demeanor at the hearing in determining her credibility. Finally, it is clear from a review of the record that the ALJ's credibility determination was not only based on his observation of Plaintiff but on the substantial medical evidence in the record.

Accordingly and upon consideration, it is **ORDERED** that Plaintiff's **Motion to Remand Pursuant to 42 U.S.C. § 405(g) (Sentence 6)** (Dkt. 9) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)   Plaintiff's motion to remand pursuant to sentence six is denied.

(2)   The decision of the Commissioner is **REVERSED** and the case **REMANDED** under sentence four for further proceedings and consideration consistent with the forgoing; and

(3)   the Clerk of Court enter final judgment in accordance with 42 U.S.C. § 405(g) as a "sentence four" remand and close the file, with each party bearing his own costs and expenses.

**DONE AND ORDERED** in Tampa, Florida on this 17th day of October, 2006.

ELIZABETH A JENKINS
United States Magistrate Judge

17